IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN and DONNA WILLIAMS, CHARLES D. HEWETT, JR., KORNITZER CAPITAL MANAGEMENT, INC., and GREAT PLAINS TRUST COMPANY, Individually, and on behalf of the beneficiaries of a Trust Indenture by and between Allwaste, Inc., | ) ) ) ) ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) | Case No. 05-1070-CV-W-GAF |
| TEXAS COMMERCE TRUST COMPANY OF NEW YORK, TEXAS COMMERCE BANK, N.A., CHASE BANK OF TEXAS, N.A., THE CHASE MANHATTAN BANK, N.A., JPMORGAN CHASE BANK, N.A., f/k/a JPMORGAN CHASE BANK, as successor to Texas Commerce Trust Company of New York, Texas Commerce Bank, N.A., Chase Bank of Texas, N.A., and The Chase Manhattan Bank, N.A., and J.P. MORGAN CHASE & CO., as successor to Texas Commerce Trust Company of New York, Texas Commerce Bank, N.A., Chase Bank of Texas, N.A., and The Chase Manhattan Bank, N.A., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court is a Motion to Remand or, In the Alternative, for Abstention filed by

1

the Plaintiffs[1]. (Doc. #3). The Defendants[2] removed this action asserting that jurisdiction was proper pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), and because the Plaintiffs' claims are "related to" a bankruptcy proceeding. (Doc. #1-1). The Plaintiffs argue that this action should be remanded because the Plaintiffs' claims have been "carved out" of the CAFA and are not "related to" a bankruptcy proceeding. (Doc. #4). Upon careful consideration of the facts and arguments submitted by the parties, the Court finds that it does not have jurisdiction pursuant to the CAFA and the Plaintiffs' claims are not "related to" a bankruptcy proceeding. Accordingly, the Plaintiffs' Motion to Remand is GRANTED.

## DISCUSSION

### I. Facts

The Plaintiffs are or were holders of 7.25% convertible subordinated debentures[3] issued by

---

[1] John and Donna Williams, Charles D. Hewett, Jr., Kornitzer Capital Management, Inc., and Great Plains Trust Company are collectively referred to as the "Plaintiffs."

[2] JPMorgan Chase & Co. (f/k/a J.P. Morgan Chase & Co.) and JPMorgan Chase Bank, N.A., as successor to Defendants Texas Commerce Trust Company of New York, Texas Commerce Bank, N.A., Chase Bank of Texas, N.A., and The Chase Manhattan Bank, N.A. are collectively referred to as the "Defendants."

[3] A "convertible subordinated debenture" is an unsecured promise to pay, backed only by the general credit of the issuer that can be exchanged at an agreed upon rate of conversion (here, 7.25%) for a predetermined number of common stock shares. The debentures are characterized as "subordinated" because the debenture holder's claim against the issuer's assets is lower ranking, or junior to, other obligations, and is paid after claims to holders of senior securities are satisfied. *See* Thomas P. Fitch, Dictionary of Banking Terms 108, 131, 441 (Irwin L. Kellner & Donald G. Simonson eds., 4th ed. 2000).

Allwaste, Inc. ("Allwaste") pursuant to a trust indenture[4] dated June 1, 1989. (Pl.'s Pet.). The Defendant, Texas Commerce Trust Company of New York acted as the original indenture trustee. Id. The Plaintiffs argue that the Defendants, as the eventual successors to the original indenture trustee, owed them certain fiduciary duties pursuant to the 1989 trust indenture. Id. The Plaintiffs claim that the Defendants breached these fiduciary duties when the Defendants caused the Plaintiffs "to be subjected to a merger" between Allwaste and Philip Services Corp. ("Philip"). Id.

Allwaste agreed to merge with Philip in March 1997. (Pl.'s Pet. ¶ 20). The Plaintiffs allege that at the time of the proposed merger, Philip was in dire financial condition and had embarked upon a buying spree in the 1990s in an effort to acquire sufficient solvent companies to keep it afloat. (Pl.'s Pet. ¶¶ 21-22). The proposed merger terms specified that the Allwaste debenture holders would no longer have the option to convert their debentures into Allwaste common stock as permitted by the 1989 trust indenture. (Pl.'s Pet. ¶ 23). The Plaintiffs assert that the revocation of the option to convert the debentures constituted an event of default under the 1989 trust indenture. Id. An event of default would require Allwaste to make an immediate payment of $30 million to the debenture holders, plus accumulated interest. (Pl.'s Pet. ¶ 24). Such a large cash payment would have depleted the cash and other financial reserves of Allwaste, rendering it unattractive to Philip and thereby ending the proposed merger. Id. The Plaintiffs claim that "the

---

[4]Debentures are issued under a deed of trust known as an "indenture." An "indenture" is a "written agreement specifying the terms and conditions for issuing bonds, stating the form of the bond being offered for sale, interest to be paid, the maturity date, call provisions and protective covenants, if any, collateral pledged, the repayment schedule, and other terms. It describes the legal obligations of a bond issuer and the powers of the bond trustee, who has the responsibility, under the Trust Indenture Act of 1939, for ensuring that interest payments are made to registered bondholders." *See* Thomas P. Fitch, Dictionary of Banking Terms 131, 232-33 (Irwin L. Kellner & Donald G. Simonson eds., 4th ed. 2000).

completion of the merger, therefore, depended upon the willingness of the indenture trustee to agree to and execute a supplemental indenture which would amend the terms of the 1989 trust indenture to provide the Allwaste debenture holders with the option to convert the debentures to Philip common stock rather than Allwaste common stock." (Pl.'s Pet. ¶ 25).

On July 30, 1997, the indenture trustee entered into a supplemental trust indenture with Allwaste and Philip. (Pl.'s Pet. ¶ 26). The 1997 supplemental trust indenture provided that the debentures could be converted into shares of Philip common stock, rather than Allwaste common stock. (Pl.'s Pet. ¶ 27). The 1997 supplemental trust indenture further provided that the debentures would be subordinate to $1.5 billion of Philip debt existing at the time of the merger. (Pl.'s Pet. ¶ 29). The Plaintiffs contend that Philip was insolvent at the execution of the 1997 supplemental trust indenture and the subsequent merger between Allwaste and Philip which became effective on July 31, 1997. (Pl.'s Pet. ¶¶ 27, 30).

Nearly one year after the merger, on June 25, 1998, Philip and Allwaste filed for Chapter 11 bankruptcy. (Pl.'s Pet. ¶ 49). The debentures were treated as a valuable but impaired Class 7 claim in the proceeding. (Pl.'s Pet. ¶ 50). On June 2, 2003, Philip and Allwaste filed for bankruptcy a second time. (Pl.'s Pet. ¶ 53). In the second bankruptcy, the debenture holders were classified Class 8 unsecured claimants and the reorganization plan estimated their probable recovery to be "extremely small to zero." (Pl.'s Pet. ¶ 54).

Consequently, the Plaintiffs filed the present action against the Defendants asserting state law claims for breach of fiduciary duties, breach of contract, negligence, equitable restitution, accounting for profits, imposition of constructive trust and civil conspiracy. (Pl.'s Pet. ¶¶ 87-139). The Plaintiffs seek, under Missouri law, to recover from the Defendants the losses they suffered as a result of the Defendants' alleged

4

breach of duties owed to the debenture holders. (Doc. #4-1). Neither Allwaste nor Philip have been named as parties in the present action. Id.

The Plaintiffs commenced this lawsuit by filing a Petition on August 25, 2005 in the Circuit Court of Jackson County, Missouri at Independence, Missouri. (Doc. #1-3). The Defendants were served with the Petition on or about October 3, 2005. (Doc. #3). The Defendants removed this action on October 31, 2005. Id. The Defendants assert two bases for jurisdiction in the federal district court. (Doc. #1-1).

First, the Defendants claim that this Court has jurisdiction pursuant to the CAFA. (Doc. #1-1). The Plaintiffs contend that the CAFA expressly exempts this lawsuit because the Plaintiffs' claims "relate to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" (*See* 28 U.S.C. § 1332(d)(9)(C)) and, alternatively, because the present action "concerns a covered security" (*See* 28 U.S.C. § 1332(d)(9)(A)). (Doc. #3). The Defendants respond by arguing that the Plaintiffs' claims are broader than the narrow exclusions of the CAFA as the Plaintiffs seek to recover on the basis of the trust indenture, a contract between the Defendants and Philip, which is not itself a security. (Doc. #16).

Second, the Defendants assert that the present action is "related to" the bankruptcy proceedings involving Philip. (Doc. #1-1). The Plaintiffs argue that their claims are not "related to" the Philip bankruptcy proceedings because the Plaintiffs are only seeking relief from the indenture trustee based on the trustee's fiduciary obligations. (Doc. #3). The Plaintiffs emphasize that they have not asserted any claims against Philip and Philip has not been joined as a party in this lawsuit. (Doc. #4). The Defendants respond by arguing that the Plaintiffs' claims present a direct challenge to the orders issued in the Chapter

5

11 bankruptcy proceedings involving Philip. (Doc. #16). The Plaintiffs argue that the bankruptcy proceedings upon which the Defendants rely in support of this argument cannot and will not be impacted by the present action because the bankruptcy proceedings have been closed for more than a year. (Doc. #24 *citing* June 24, 2004 Order and Final Decree Closing Chapter 11 Cases of Remaining Debtors Pursuant to Bankruptcy Rule 3022).

**II.     Standard**

A motion to remand functionally challenges the removal of the action to federal court. An action originally filed in state court may be removed to federal court where the federal district court has original jurisdiction over the case. 28 U.S.C. § 1441(a). If it appears that the case was not properly removed because it was not within the original subject matter jurisdiction of the United States district courts, the district court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). "Federal courts are courts of limited jurisdiction," and a federal court must therefore determine its jurisdiction as a threshold matter. Kessler v. Nat'l Enter., Inc., 347 F.3d 1076, 1081 (8th Cir. 2003) *quoting* Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998), *cert denied* 526 U.S. 1098 (1999). "As the party seeking removal and opposing remand, [defendants have] the burden of establishing federal subject matter jurisdiction."[5] In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir.

---

[5]The Court recognizes the existence of a split among the courts on whether the CAFA shifts the burden of proof to the party seeking remand. *See* Ongstad v. Piper Jaffray & Co., 407 F.Supp.2d 1085, 1088 (D. N.D. 2006). District courts in New Jersey, California and Washington have held that the CAFA shifts the burden to the party seeking remand. Id. (internal citations omitted). These district courts have relied upon a Senate Judiciary Committee report which provides, "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)." Id. *quoting* S. Rep. 14, 109th Cong. 1st Sess. 42 (2005).

6

Case 4:05-cv-01070-GAF    Document 39    Filed 06/15/06    Page 6 of 16

1993) (per curiam) *citing* Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 n. 13 (8th Cir. 1978).

In the present action, the Defendants assert that removal is proper because this Court has original jurisdiction over the Plaintiffs' claims pursuant to the CAFA and because the Plaintiffs' claims are "related to" to the Philip bankruptcy proceedings. The Court will proceed to consider each of these potential bases for removal.

**III.   Analysis**

   *A.   Jurisdiction does not exist over the Plaintiffs' claims pursuant to the CAFA.*

On February 19, 2005, President George W. Bush signed the Class Action Fairness Act into law. The CAFA amended 28 U.S.C. § 1332 to establish original subject matter jurisdiction over most class actions and amended 28 U.S.C. § 1453 to generally allow the removal from state court of class actions in which the class consists of more than 100 purported members, the matter in controversy exceeds $5 million, and any member of the class is diverse from any defendant. J.R. Whaley & Christin Lipsey, Brill v. Countrywide Homes: Burden of Proof in Remand Proceedings Under The Class Action Fairness Act, Federal Lawyer, May 2006, at 18, *available at Westlaw*, 53-MAY Fed. Law. 18.   Although the

---

Conversely, district courts in Oklahoma, Missouri, Pennsylvania, Washington, California and the Seventh Circuit Court of Appeals have held that the CAFA does not alter the traditional rule of law that the party opposing remand bears the burden of establishing federal jurisdiction. Ongstad, 407 F.Supp.2d at 1088 (internal citations omitted). After a careful and thorough examination of the Missouri district court opinion and the decision of the Seventh Circuit Court of Appeals, the Ongstad court concluded that the CAFA does not shift the burden of proof in motions to remand. Similarly persuaded by the opinion of the Missouri district court in Judy v. Pfizer, Inc., 2005 WL 2240088 (E.D. Mo. Sept. 14, 2005) and the Seventh Circuit Court of Appeals in Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005), this Court finds that the CAFA did not alter the "well-established rule of law that the removing party bears the burden of establishing federal subject-matter jurisdiction." *See* Ongstad, 407 F.Supp.2d at 1090.

7

"overarching goal" of the CAFA was to greatly expand federal jurisdiction over most class actions, Congress included certain exceptions to the general provisions. Id.

In the notice of removal, the Defendants state that this Court has jurisdiction over the Plaintiffs' claims pursuant to the CAFA in that one member of the class of Plaintiffs and a Defendant are of diverse citizenship, and the amount in controversy exceeds $5,000,000. (Doc. #1-1, ¶ 20). The Plaintiffs do not challenge the Defendants' assertion that the present action meets the general provisions for removal under the CAFA. (Doc. #16). Rather, the Plaintiffs argue that two exceptions to the general provisions of the CAFA function to deprive this Court of jurisdiction over the Plaintiffs' claims. Id.

First, the CAFA provides that district courts may not exercise jurisdiction over any class action that solely involves a claim "[t]hat relates to the rights, duties (including fiduciary duties) and obligations relating to or created by or pursuant to any security(as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)[6]) and the regulations issued thereunder." 28 U.S.C. § 1332(d)(9)(C). The Plaintiffs contend that their claims are based solely upon the fiduciary duties which the Defendants, as the indenture trustee, owed the Plaintiffs, as debenture holders. (Doc. #4). As the state law claims asserted in the Petition relate only to the "duties (including fiduciary duties) . . . relating to or created by or pursuant to any security", the Plaintiffs argue that the present action is exempt from jurisdiction under the CAFA. Id.

In support of their argument, the Plaintiffs cite two district court opinions: <u>Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care Group, Inc.</u>, 2005 WL 2000658

---

[6]15 U.S.C. § 77b(a)(1) defines security as "any . . . debenture . . ." The parties do not dispute that the convertible subordinated debentures at issue in the present case satisfy the definition of "security" found in 15 U.S.C. § 77b(a)(1).

8

(M.D. Tenn. Aug. 8, 2005) and In re Textainer Partnership Securities Litigation, 2005 WL 1791559 (N.D. Cal. July 27, 2005). The Plaintiffs assert that these are the only two courts that have considered 28 U.S.C. § 1332(d)(9)(C). In each of these cases, the district court found that the plaintiff's claims for breach of fiduciary duty precluded jurisdiction under the CAFA on the basis of 28 U.S.C. § 1332(d)(9)(C). The Defendants assert that these cases are easily distinguishable from the present case because the plaintiffs in both Indiana State and Textainer asserted only breach of fiduciary duty claims. (Doc. #16). While this assertion is true with respect to Textainer, 2005 WL 1791559 at *1 ("Plaintiff asserts a single cause of action against defendants, under California law, for breach of fiduciary duty."), Indiana State, 2005 WL 2000658 at *1, provides: "[t]he cause*s* of action alleged, based upon Delaware state law, are broadly breach of fiduciary duties and self-dealing in connection with a corporate merger" (emphasis added). Based on this statement, the Court is not convinced that a single claim of breach of fiduciary duty was asserted by the plaintiffs in Indiana State. Consistent with the holding in Indiana State, this Court finds that it does not have jurisdiction under the CAFA over the multiple state law claims asserted by the Plaintiffs, all of which arise out of the "rights, duties (including fiduciary duties) and obligations" owed the Plaintiffs by the Defendants.

The Defendants further argue that Indiana State and Textainer are distinguishable from the present case because neither plaintiff had filed suit against a "third-party to the security." (Doc. #16). Rather, the plaintiffs in Indiana State, 2005 WL 2000658 at *1, filed a shareholder class action against the company in which they owned common stock and the company's board of directors challenging the terms of a corporate merger. The plaintiffs in Textainer, 2005 WL 1791559 at *1, were holders of limited partnership units and filed a class action against the general partners challenging the terms of a proposed sale of the

9

partnerships' assets as negotiated by the general partners. Although the Defendants are correct that in the present case the Plaintiffs have not asserted claims against the issuer of the securities (Allwaste and its successor Philip), the Defendants fail to articulate why the identity of the fiduciary is significant in the application of 28 U.S.C. § 1332(d)(9)(C). The Defendants have not presented any legal authority demonstrating that 28 U.S.C. § 1332(d)(9)(C) only operates to preclude jurisdiction premised on the CAFA in suits brought against a certain type of fiduciary, i.e. the issuer of the security. If Congress had intended only to carve out fiduciary duty claims asserted against the issuer of a security, Congress would have so limited the scope of 28 U.S.C. § 1332(d)(9)(C). However, because Congress did not limit the class of fiduciaries, the Court finds that the identity of the fiduciary is irrelevant.

Finally, the Defendants argue that the exemption of 28 U.S.C. § 1332(d)(9)(C) does not apply to the present action because the Plaintiffs seek to enforce "rights, duties (including fiduciary duties) and obligations" arising under the indenture, which the Defendants assert is "one step removed from the securities." (Doc. #16). The Defendants contend that although the indenture may "deal with" the debentures, "the security is the debenture – the issuer's promise to re-pay the debenture holder" and "the indenture . . . is a contract and not itself a security." Id.

Although a trust indenture is not itself a security, it is a necessary document to the issuance of debentures which are to be traded on the open market. A trust indenture specifies the terms and conditions for the issuance of the bonds, the interest to be paid, the maturity date, the call provisions and protective covenants, if any, the collateral pledged, the repayment schedule, and other terms. Without the debentures, the trust indenture would not exist. The Court agrees with the Defendants that the indenture "deals with" the debentures and that the relationship between the trust indenture and the debenture is sufficient for this

10

Court to conclude that the trust indenture is "related to" the securities at issue.

Based on the foregoing, this Court concludes that 28 U.S.C. § 1332(d)(9)(C) deprives this Court of jurisdiction over the Plaintiffs' claims pursuant to the CAFA. Because the Court finds that the entire action is exempt from CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d)(9)(C), this Court will not proceed to determine if the Plaintiffs' claims are also exempt from jurisdiction under the CAFA pursuant to 28 U.S.C. § 1332(d)(9)(A).

### B. *The Plaintiffs' claims are not "related to" the Philip bankruptcy proceedings and therefore, jurisdiction does not exist pursuant to 28 U.S.C. § 1334(b).*

In the notice of removal, the Defendants state that the present action is properly removed pursuant to 28 U.S.C. § 1452(a) which provides in relevant part:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(Doc. #1-1). Pursuant to 28 U.S.C. § 1334(b) ("§ 1334(b)"), the federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. The Defendants contend that this Court has original jurisdiction over the present action pursuant to § 1334(b) because the Plaintiffs' claims are "related to" the Philip bankruptcy proceedings: In re Philip Services (Delaware) Inc., No. 99-02385, in the United States Bankruptcy Court for the District of Delaware, filed June 25, 1999 and terminated June 29, 2004 and In re Philip Services Corporation, No. 03-37718-H2-11, in the United States Bankruptcy Court for the Souther District of Texas, filed June 2, 2003. Id. The Defendants argue that "the Delaware Bankruptcy Court was a court of competent

11

jurisdiction at the time it resolved all claims by and among the creditors to Philip." (Doc. #16). The Defendants contend that the Plaintiffs' claims against the Defendants "were specifically addressed and released by Art. IV.I.2(b) of the 1999 Bankruptcy Plan."[7] Id.

The Plaintiffs assert that the present action is not "related to" the Philip bankruptcy proceedings and therefore this Court does not have original jurisdiction pursuant to § 1334(b). (Doc. #4). In support of their argument, the Plaintiffs cite Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770 (8th Cir. 1995). In Specialty Mills, the Eighth Circuit considered whether the plaintiffs' state law claims were sufficiently "related to" a bankruptcy proceeding to give rise to jurisdiction under § 1334(b). Specialty Mills, 51 F.3d at 773. The Eighth Circuit began its analysis by distinguishing between core proceedings and non-core, related proceedings in a bankruptcy case. Id. The Eighth Circuit observed that "non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy." Id. at 773-74. In determining whether subject matter jurisdiction exists over a case that is "related to" a bankruptcy proceeding, "there must be some nexus between the civil proceeding and the Title 11 case." Id. at 774. "For courts to assert jurisdiction over a proceeding 'related to' a bankruptcy case, the proceeding must

---

[7]The Defendants also contend in their notice of removal that the 1989 trust indenture contains an indemnification provision which, according to the "Bankruptcy Plan," remains in full force and effect. (Doc. #1-1). The Defendants do not identify in which proceeding the "Bankruptcy Plan" was entered. Furthermore, the Defendants have failed to specifically cite this Court to the portion of the 1989 trust indenture wherein the alleged indemnity clause appears. Also, the Defendants have not attached the 1989 trust indenture to either their notice of removal or their Opposition to the present Motion. The Defendants abandon their argument regarding the indemnity clause allegedly set forth in the 1989 trust indenture in their Opposition to the present Motion. Accordingly, the Court is unable to determine whether the indemnity clause exists and whether it would give rise to "related to" jurisdiction under 28 U.S.C. § 1334(b).

12

'have some effect on the administration of the debtor's estate.'" Id. at 774 *quoting* In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir. 1987). The Eighth Circuit has adopted that "conceivable effect" test for determining whether a civil proceeding is related to a bankruptcy case:

> [T]he test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy . . .
> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.

Id. at 774 *quoting* Dogpatch, 810 F.2d at 786 *quoting* Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984). In Specialty Mills, the Eighth Circuit ultimately concluded that the plaintiffs' state law claims were not sufficiently "related to" the bankruptcy proceeding to give rise to jurisdiction under § 1334(b) because the civil proceeding was filed after final resolution was entered in the bankruptcy court, the plaintiff hadn't asserted any claims against the debtor and a verdict in the plaintiff's favor would have no effect on the administration of the bankruptcy estate. Specialty Mills, 51 F.3d at 774.

Given the holding in Specialty Mills, the Plaintiffs contend that the Defendants have failed to prove that the present action is sufficiently "related to" the Philip bankruptcy proceedings to give rise to jurisdiction under § 1334(b). The Court agrees. The Plaintiffs have not asserted a claim against Philip and Philip is not a party to the present lawsuit. Rather, the Plaintiffs' claims arise solely out of the Plaintiffs' relationship with the Defendants. Nothing contained in the Plaintiffs' complaint alters Philip's rights, liabilities, options or freedom of action. Furthermore, the Philip bankruptcy proceedings before the Delaware court, upon which the Defendants rely in support of their position, had been closed for more than one year at the time the Plaintiffs filed the present action. Like the plaintiffs in Specialty Mills, the Plaintiffs

13

in the present case filed this civil proceeding after final resolution of the bankruptcy estate, did not assert any claims against the debtor, and a verdict in the Plaintiffs' favor would not affect the administration of the Philip bankruptcy estate. As such, the Court concludes that this proceeding will not have any effect on the administration of Philip bankruptcy estate. Despite the fact that there may be some convergence between the interests of the parties in the present case and Philip, this is insufficient to impart "related to" jurisdiction absent an impact on the administration of the Philip bankruptcy estate or the allocation of Philip's assets. *See* Specialty Mills, 51 F.3d at 774.

The Defendants do not attempt to distinguish or discredit the precedent of Specialty Mills in their Opposition to the present Motion. (Doc. #16). Rather, the Defendants argue that the Delaware Bankruptcy Court resolved all claims by and among the creditors of Philip. Id. According to the Defendants, Article IV.I.2(b) of the 1999 Bankruptcy Plan confirmed by the Delaware Bankruptcy Court specifically addressed and released the Plaintiffs' claims against the Defendants. Id. The Defendants contend that as "holders of a Claim or Interest" against Philip, the Plaintiffs agreed to "release forever, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities" whether "matured or unmatured, known or unknown, foreseen or unforeseen" against the "Lenders." Id. *quoting* Art. IV.I.2(b) of the 1999 Bankruptcy Plan confirmed by the Delaware Supreme Court on November 30, 1999. The Defendants contend that they are "Lenders" based on the Plaintiffs' specific allegations that "the Defendants' role as a 'Lender' to Philip is the basis for the alleged 'conflict of interest' at issue in this action." (Doc. #16 quoting Pl.'s Pet. ¶¶ 56-61). In the Petition, the Plaintiffs contend that the "Defendants acted as Indenture Trustee to the Debenture Holders at the same time they were negotiating with Philip to protect their own interest in substantial outstanding loan obligations,

14

which were threatened by Philip's impending bankruptcy." (Pl.'s Pet. ¶ 56). The Plaintiffs further allege that the "Defendants and other Lenders extended a $1.5 billion line of credit to Philip." (Pl.'s Pet. ¶ 58). The Defendants use these allegations to argue that they are "Lenders" as that term is used in Art. IV.I.2(b) of the 1999 Bankruptcy Plan confirmed by the Delaware Supreme Court on November 30, 1999.

However, the term "Lenders" is defined in the 1999 Bankruptcy Plan at Art. I.B.(1.92) as follows: "'Lender' means a 'Lender' as defined in the Pre-Petition Credit Agreement, CIBC as Administrative Agent, BTCo as syndication agent, CIBC and BTCo as co-arrangers, and their individual successors and assigns." According to the 1999 Bankruptcy Plan definitions, "CIBC" means Canadian Imperial Bank of Commerce (*See* Art. I.B.(1.39)) and "BTCo" means Bankers Trust Company (*See* Art. I.B.(1.19)). Based on the record before the Court, the Defendants are not the CIBC, the BTCo or the individual successors and assigns of these entities. The Defendants have not provided this Court with the Pre-Petition Credit Agreement to determine if the Defendants satisfy the definition of "Lender" found therein. Accordingly, as the Defendants do not fall within the definition of "Lender" found in the 1999 Bankruptcy Plan, the Court is not persuaded by the Defendants' argument that they are "Lenders" under the Plan.

Furthermore, the Defendants' strained interpretation of "Lender" is inconsistent with the underlying objectives of the Philip bankruptcy proceedings. The Philip bankruptcy proceedings sought to determine the priority of Philip's creditor's claims, to decide who was entitled to Philip's remaining assets and to resolve and extinguish any claim that would be owed by Philip as a result of its financial insolvency. Although the record reveals that the Plaintiffs, as debenture holders, and the Defendants, as lenders, were both creditors of Philip, the Plaintiffs' claims against the Defendants arise out of the Defendants' alleged misconduct for which Philip is not liable. Section 1334(d) should not be interpreted to provide "related

15

to" jurisdiction over a civil litigation between two entities which incidentally happened to be creditors of a bankrupt entity where the claims which are the subject of the litigation will not be satisfied by the bankrupt's estate.

## CONCLUSION

The Plaintiffs' multiple state law claims are exempt from jurisdiction under the CAFA pursuant to 28 U.S.C. § 1332(d)(9)(C) because all of the claims "relate to the rights, duties (including fiduciary duties) and obligations relating to or created by or pursuant to any security." Furthermore, the Plaintiffs' claims are not "related to" the Philip bankruptcy proceedings because the present action was filed after final resolution was entered in the bankruptcy proceeding, the Plaintiffs have not asserted any claims against Philip and a verdict in the Plaintiffs' favor would have no effect on the administration of the Philip bankruptcy estate. As the Court does not have original jurisdiction over the present action pursuant to the CAFA or § 1334(b), the Plaintiffs' Motion to Remand is GRANTED. The Plaintiffs' claims are HEREBY REMANDED to state court for further adjudication.

**IT IS SO ORDERED**.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: June 15, 2006